**In the Matter of Warren Paul BREIT and Laurie Diann Breit, Debtors.**

**No. 11–32461 HCD.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

March 27, 2013.

---

Debra L. Miller, Standing Chapter 13 Trustee, South Bend, IN, Randy C. Eyster, Esq., Indianapolis, IN, for JPMorgan Chase Bank, N.A.

## MEMORANDUM OF DECISION

HARRY C. DEES, JR., Bankruptcy Judge.

Before the court are the Trustee's Objection to Claim Number 6–1, filed by Debra L. Miller, Standing Chapter 13 Trustee ("Trustee"), and the Response to that objection by JPMorgan Chase Bank, National Association ("Chase"), the service provider for the debtors' mortgage on their residence. The objection focuses on the amount of Chase's pre-petition arrearage claim. After a hearing, the parties filed stipulated facts and briefs on the matter. For the reasons that follow, the court sustains the Trustee's Objection to Claim No. 6–1.[1]

## BACKGROUND

The debtors herein, intending to preserve their home, filed a chapter 13 bankruptcy petition. They scheduled Chase as a creditor holding a secured claim in their residence. Chase filed Proof of Claim No. 6–1. It claimed a secured claim of $126,428.06 and an arrearage claim of $27,897.09. The Trustee objects to the

---

1. The court has jurisdiction to decide the matter before it pursuant to 28 U.S.C. § 1334 and § 157 and the Northern District of Indiana Local Rule 200.1. The court has determined that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

claim on the ground that the arrearage amount is overstated by $3,379.35. The Trustee asserts that the total pre-petition arrearage should be adjusted to be $24,517.74.

The parties have stipulated to the following facts concerning this chapter 13 case:

1. This case was filed on June 20, 2011. Pursuant to the confirmed Plan, the cure amount and the continuing post-petition mortgage payments are to be paid through the Trustee conduit.

2. On March 1, 2012, [Chase] filed Court Claim No. 6–1 in the amount of $126,428.06.

3. Pursuant to the attachments to Court Claim No. 6–1, the claim shows a total pre-petition arrearage of $27,897.09.

4. The pre-petition arrearage attachment (B 10 Attachment A) filed on March 1, 2012 indicates the following amounts are used to calculate the pre-petition arrearage:

    a. $1,436.37 in pre-petition fees; and

    b. 24 monthly installment payments of $1,102.53.

5. The principal and interest payment was $804.79 during the 24 months prior to the filing of the bankruptcy.

6. On the date the bankruptcy was filed, the escrow balance for the mortgage was $–2,909.37.

7. On the date of bankruptcy, the target balance[2] with [the] cushion for the mortgage escrow account, [required by the Real Estate Settlement Procedures Act ("RESPA") ], was $857.04.[3]

R. 62.

The Trustee points out that, in a chapter 13 case, the pre-petition arrearage generally is the amount due to a creditor to cure the debtors' deficiency on their mortgage. The arrearage is the sum of:

(1) the amount of taxes and insurance advanced by the creditor and unpaid by the debtor pre-petition;

(2) the amount of unpaid principal and interest due as of the petition date;

(3) the amount of unpaid fees, costs, and attorney fees allowable under the mortgage documents as of the petition date; and

(4) the amount that should have been in the escrow account to properly fund the ongoing taxes and insurance as required under applicable non-bankruptcy law.

R. 66 at 1. The Trustee argues that the pre-petition arrearage amount listed on the creditor's Proof of Claim is overstated and was not calculated in this manner.

---

2. The "target balance" is "the estimated month end balance in an escrow account that is just sufficient to cover the remaining disbursements from the escrow account in the escrow account computation year, taking into account the remaining scheduled periodic payments, and a cushion, if any."
24 C.F.R. § 3500.17(b).

3. The Real Estate Settlement Procedures Act ("RESPA") is a federal statute enacted to provide consumers "with greater and more timely information on the nature and costs of the settlement process" and to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). Its purpose is "to effect certain changes in the settlement process for residential real estate that will result" in better disclosure of settlement costs to home buyers and sellers, elimination of kickbacks, reduction in amounts escrowed for payment of taxes and insurance, and other reforms. *Id.*, § 2601(b); *See Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 191 (S.D.Tex.2007). The Department of Housing and Urban Development promulgation Regulation X as a method for implementing RESPA. *See* 24 C.F.R. § 3500.1 *ff.*

The Trustee and Chase agree on these principles and calculations in this case:

(a) The pre-petition arrearages should be paid over 24 months in monthly installments.

(b) The pre-petition installment payments should include unpaid principal and interest payments.

(c) In this case, the debtors' monthly payment for principal and interest was $804.79.

(d) The delinquent $804.79 payment, multiplied by 24 months = $19,314.96 principal/interest.

(e) The delinquent fees and costs should be added. In this case, the sum is $1,436.37.

(f) The target balance, or escrow shortage, should be added. In this case, it is $857.04.

According to the Trustee, when these arrearages are added, the total amount of the pre-petition arrearage is $24,517.74, not Chase's sum of $27,897.09.

The disagreement between the Trustee and Chase involves the additional amount Chase adds to the arrearage calculation: Chase includes an "escrow deficiency." According to Chase, the pre-petition installment payments include both principal and interest payments, $804.79, and the escrow deficiency, $297.74, multiplied by 24 months. The total escrow deficiency charged by Chase, for 24 months of payments, is $7,145.76. The Trustee asserts that the only payments Chase made on behalf of the debtors from escrow were for pre-petition taxes and insurance, and those payments totaled $2,909.37. She argues that only $2,909.37, and not $7,145.76, should be included as a pre-petition escrow arrearage.

## DISCUSSION

When a proof of claim is filed under 11 U.S.C. § 501, the claim is deemed allowed and presumed to be valid unless a party in interest objects. 11 U.S.C. § 502(a). However, when an objection is raised, the validity and/or amount of the claim is contested and the objector, in this case the Trustee, must provide evidence supporting the objection and refuting the claim. *See In re VanCleef,* 479 B.R. 809, 821 (Bank.N.D.Ind.2012). If the objector meets her burden of production, the burden then shifts to the claimant to prove the validity and/or amount of the claim. *See id.; see also In re Wells,* 463 B.R. 320, 326 (Bank.E.D.Pa.2011) (stating that "the ultimate burden of persuasion is always on the claimant") (citation omitted).

The court finds that the Trustee has presented sufficient evidence to challenge the amount of Chase's reported pre-petition escrow arrearage. She acknowledges that Chase paid $2,909.37 from the debtors' escrow account for taxes and insurance, but claims that Chase's "escrow component" of $297.74 included in each installment payment, which over 24 months totaled $7,145.76, overstated the arrearage.

Chase, in response, first points out that its Claim No. 6–1 fully complies with all the filing requirements of Federal Rule of Bankruptcy Procedure 3001, as amended effective December 1, 2011. The court agrees that the Trustee has not alleged that Chase's Proof of Claim fails to comply with procedural requirements. Nor is there any challenge to Chase's general right to a pre-petition escrow deficiency. Lenders have an enforceable right to collect the past-due escrow payments by means of a pre-petition claim. *See, e.g., In re Rodriguez,* 629 F.3d 136, 142 (3d Cir. 2010), *cert. denied,* — U.S. ——, 132 S.Ct. 573, 181 L.Ed.2d 420 (2011); *Camp-*

*bell v. Countrywide Home Loans, Inc. (In re Campbell)*, 545 F.3d 348, 353–54 (5th Cir.2008); *In re Beaudet*, 455 B.R. 671, 673 (Bank.M.D.Tenn.2011). The court finds that Chase, a lender and/or mortgage servicer, is authorized to collect monthly escrow payments from the debtors under RESPA.[4] The debtors' Mortgage in this case also clearly provides for the collection of escrow payments and past-due escrow arrearages. Moreover, when borrowers file bankruptcy, as they did here, a lender or servicer has a right to a pre-petition claim for the escrow deficiency. The issue herein is not Chase's right to a pre-petition escrow arrearage claim; it is the amount of that claim that the Trustee challenges.

■ The court considers first what payments a mortgage servicer makes for a borrower from an escrow account. RESPA, through its implementing Regulation X, defines "escrow account" in its definition section in this way:

> *Escrow account* means any account that a servicer establishes or controls on behalf of a borrower to pay taxes, insurance premiums (including flood insurance), or other charges with respect to a federally related mortgage loan, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay.

24 C.F.R. § 3500.17(b). Under the terms of the debtors' Mortgage, the debtors are required to make monthly payments of principal, interest, and "escrow items." The items included in escrow are:

(a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property;

(b) leasehold payments or ground rents on the Property, if any;

(c) premiums for any and all insurance required by Lender . . .; and

(d) Mortgage Insurance premiums, if any.

R. 67, Att., Mortgage, at p. 4, ¶ 3. Chase has not pointed to any payments, other than taxes and insurance, that it made on behalf of these debtors.

The evidence shows that a deficiency resulted from Chase's payment for taxes and insurance, in the amount of $2,909.37. However, the court finds that Chase has failed to explain what other escrow items would account for its claimed escrow deficiency of $7,145.76. It simply explains, as a matter of fact, that the 24 installment payments of $1,102.53 claimed in its Proof of Claim had two components, a principal and interest component in the amount of $804.79 and an escrow component of $297.74. *See* R. 67 at 4. It gives no further explanation of the "escrow component" or of its right to it.

Chase does recognize that the "escrow account balance at the time of filing was $–2,909.37 [and that] the target balance as noted on the escrow statement is $857.04." *Id.* Adding those two figures together, Chase reports "an escrow shortage of $3,766.41." *Id.* It explains, however, that it did not assert that escrow shortage on

---

4. The amount that a mortgage holder or servicer can collect as a monthly escrow is governed by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *ff.*

RESPA provides that a loan servicer can estimate the property taxes and insurance that will be due on the property for the ensuing twelve months and adjust the monthly payments under the mortgage by

1/12 of the total calculations to cover the estimated expenses. RESPA also allows the lender to include an additional 1/6 of the monthly escrow payment to provide a cushion to cover any estimate shortfalls. *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d at 351 (citing 12 U.S.C. § 2609(a)(1)).

the B 10 Attachment A Form "because such a calculation fails to account for the escrow to be recovered from the pre-petition payments." *Id.* Instead, Chase states that it is necessary to employ a "mathematical manipulation" when calculating the "escrow shortage." [5] *Id.*

The court finds that Chase does not base its imaginative mathematical calculations on any formula provided by RESPA, Regulation X, or the Bankruptcy Code and Rules. *See In re Stewart*, 391 B.R. 327, 357 (Bank.E.D.La.2008) (finding that lender miscalculated escrow account amounts, demanded substantially more each month than was allowed under RESPA). Indeed, Chase takes these arithmetic twists and turns when the provisions for calculating escrow deficiencies are straightforwardly spelled out. In this case, the untangling is necessary. The escrow shortage of $2,909.37—Chase's payment of the debtors' taxes and insurance—is clearly a pre-petition debt. However, Chase's "escrow component" of $297.74—included in Chase's claimed installment payments—is unexplained as a pre-petition debt. That "escrow component" portion of the pre-petition installment payments is, on this record, without basis in fact and without justification pursuant to RESPA, Regulation X, or the Bankruptcy Code and Rules.

In conclusion, the court finds that the Trustee met her initial burden of demonstrating Chase's overstatement of its pre-petition arrearage.[6] Chase, with the ultimate burden of persuasion, failed to disprove this charge. The court thus finds that Chase did not meet its burden of showing why it is entitled to reimbursement of the overstated installment payments claimed in its Proof of Claim, Form B 10 Attachment A.

Accordingly, the court sustains the Objection of the Trustee and allows the "total [arrearage] amount necessary to cure default as of the petition date" on Form B 10 (Attachment A) of Chase's Claim No. 6–1 in the amount of $24,517.74.

SO ORDERED.

---

5. Chase explains its accounting for the shortage with this "mathematical manipulation":
   A review of the escrow statement shows Chase accounted for the escrow to be recovered in pre-petition payments by crediting the account the amount of those payments ($7,145.75) at the time of the filing (see escrow statement entry dated 6/10).

   As a result, the analysis calculates an escrow surplus. However, that surplus is based on the mathematical manipulation necessary to prevent an artificial shortage. As this analysis demonstrates, such an approach would clearly be to the detriment of the debtor. *Id.*

6. The Trustee set forth the proper calculation of the mortgage arrearage according to this formula:

| | |
|---|---|
| 1. Principal and interest payment times the months delinquent: $804.79 × 24 months = | $19,314.96 |
| 2. Taxes and insurance due (escrow deficiency): | $ 2,909.37 |
| 3. Fees and costs due and owing: | $ 1,436.37 |
| 4. Escrow shortage on date of filing: | $    837.04 |
| TOTAL OF PRE–PETITION ARREARAGE: | $24,517.74 |